UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MELANIE BROWN MYERS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-3033 |
| | § | |
| **KILOLO KIJAKAZI,** *Commissioner of Social Security Administration*, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Melanie Brown Myers ("Plaintiff") filed this lawsuit against Defendant Kilolo Kijakazi ("Commissioner") seeking review of the denial of benefits under Title II of the Social Security Act. (Dkt. No. 1.) Pending before the Court[1] are the parties' cross-motions for summary judgment. (Dkt. Nos. 14–15.) Based on the briefing, record, and law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **DENIED**, Commissioner's Motion for Summary Judgment be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff is a 44-year-old woman who last worked as a beauty school instructor and previously worked in emergency management for the City of Houston. (R. at 32–33, 54.)[2] On February 7, 2019, Plaintiff filed an application for disability, seeking benefits beginning on December 1, 2016 for fibromyalgia, nerve disorder, neuromuscular issues, anxiety, depression, lower back disc disorder, mood problems, frequent falls, bilateral carpal tunnel, and cubital tunnel.

---

[1] On May 27, 2022, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 19.)

[2] The Administrative Record in this case can be found at Dkt. No. 5.

(R. at 54–55.) The Social Security Administration denied Plaintiff's claims initially on August 21, 2019 and again on reconsideration on December 17, 2019. (R. at 90–93, 96–98.) On December 27, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 99.) ALJ Robert N. Burdette held a hearing on November 10, 2020 during which Plaintiff was represented by Counsel. (R. at 26–53.) Plaintiff testified at the hearing. (R. at 32–48.) Thomas W. King, a vocational expert ("VE"), also testified. (R. at 48–52.)

On November 24, 2020, the ALJ denied Plaintiff's application for benefits, finding Plaintiff not disabled at Step Four of the evaluation process. (R. at 10–19.)[3] At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 1, 2016. (R. at 12.) At Step Two, the ALJ found Plaintiff has the following severe impairments: peripheral neuropathy, carpal tunnel syndrome, generalized anxiety disorder, and major depressive disorder. (R. at 13–14.) At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with peripheral neuropathy (Listing 11.14), depressive disorder (Listing 12.04), or anxiety disorder (Listing 12.06). (R. at 14–15.) The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work with additional mental and physical limitations. (R. at 15–18.) At Step Four, the ALJ found Plaintiff is capable of performing her past relevant work as an information clerk and therefore Plaintiff is not disabled under the Social Security Act. (R. at 18.)

---

[3] In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520).

Plaintiff appealed to the Appeals Council on January 22, 2021. (R. at 226–28.) On July 6, 2021, the Appeals Council denied Plaintiff's request for review. (R. at 1–4.) The ALJ's decision, therefore, represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On September 15, 2021, Plaintiff filed this civil action under 42 U.S.C. § 405(g). (Dkt. No. 1.) In the appeal, Plaintiff argues the ALJ erred in finding she does not meet the Listing 11.14 criteria for peripheral neuropathy and erred in formulating her mental RFC without medical opinion evidence. (Dkt. No. 14.)

## II.  STANDARD OF REVIEW

The court's review of a final decision of the Commissioner on a Social Security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "[R]eview of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a

rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822–23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

### III.   DISCUSSION

Plaintiff makes two arguments in this appeal. (Dkt. No. 14.) First, Plaintiff argues that the ALJ erred in finding her peripheral neuropathy does not meet the criteria for Listing 11.14(A) because the evidence of record—particularly, the hearing testimony, neurological treatment and physical therapy notes, prescription for a walker, and disability parking placard—demonstrates that she has an extreme limitation in her ability to balance while standing or walking. (*Id.* at 10–15.) Second, Plaintiff argues that the ALJ erred by formulating her mental RFC based on his own lay interpretation of the evidence and that she was harmed because the ALJ may have come to a different conclusion without the error. (*Id.* at 15–19.) Both of these arguments lack merit.

#### A.   Listing 11.14 for Peripheral Neuropathy

At Step Three of the evaluation process, the ALJ must determine whether a claimant's impairments meet or equal the listing criteria as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). If so, the claimant is presumed disabled. *Id.* at 532. The criteria in the medical listings are demanding and stringent, *Heck*, 674 F. App'x at 414–15, and "[t]he burden of proof rests with a claimant to provide and identify *medical*

4 / 12

*signs and laboratory findings* that support *all* criteria for a Step 3 impairment determination." *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 661 (E.D. Tex. 2006). "[A] claimant may not establish Listings level severity through subjective testimony." *Id*. Listing 11.14 for peripheral neuropathy requires, in relevant part, disorganization of motor function in two extremities resulting in an extreme limitation in the ability to balance while standing or walking. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.14(A). Extreme limitation in balancing while standing or walking means the inability to "maintain an upright position while standing or walking without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." *Id.* § 11.00(D)(2).

The ALJ here found, at Step Three, that Plaintiff's peripheral neuropathy does not meet Listing 11.14 because "there is no evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to . . . balance while standing or walking." (R. at 14.) The ALJ provided no further explanation at Step Three, but did address Plaintiff's peripheral neuropathy in determining the RFC. (*See* R. at 15–18.) The ALJ recognized Plaintiff's hearing testimony that she falls four times per week, was prescribed a walker, and has increased symptoms when the weather is cold. (R. at 16.) However, the ALJ found Plaintiff's alleged symptoms are not entirely consistent with the record evidence. (R. at 16.) The ALJ noted that an MRI of Plaintiff's brain and spine were essentially normal and that Plaintiff's symptoms were controlled with Lyrica. (R. at 17.) The ALJ also noted that Plaintiff was observed by a healthcare provider walking around without a walker and without being in acute distress. (R. at 17.) The ALJ thus concluded the objective exams and records show that treatment is effective to a certain degree and that Plaintiff is not entirely reliant upon an assistive device for ambulation. (R. at 17.)

The ALJ's findings as to Plaintiff's neuropathy are supported by the record and demonstrate Plaintiff does not meet the requirements for Listing 11.14(A). As to the parking

placard, a disability finding by another governmental or nongovernmental agency outside the social security context is not binding on the Commissioner, *Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990), and the definition of disability under the Texas Transportation Code "is a much lower standard than that required of a claimant in a social security disability case." *Baisden v. Comm'r of Soc. Sec.*, No. 20-CV-511, 2022 WL 3042285, at *4 n.6 (E.D. Tex. July 6, 2022), *report and recommendation adopted*, 2022 WL 3036004 (July 29, 2022); *see also Solanki v. Colvin*, No. 15-CV-3250, 2016 WL 7742816, at *2–3 (S.D. Tex. Aug. 3, 2016), *report and recommendation adopted*, 2016 WL 4939567 (Sept. 13, 2016).[4] Moreover, the doctor who signed the parking placard application here designated Plaintiff as temporarily disabled. (R. at 1268–69.)

As to the prescription for a walker, Plaintiff's doctor did find that she needs a walker with a seat due to frequent falls. (R. at 1059.) A prescription for an assistive device, however, is not necessarily dispositive in the social security context and the ALJ "must still consider the particular facts of the case." *Bivens v. Saul*, No. 20-CV-1904, 2022 WL 869687, at *11 (N.D. Tex. Mar. 7, 2022) (quotations omitted), *report and recommendation adopted*, 2022 WL 865903 (Mar. 22, 2022). The ALJ here considered that Plaintiff was observed walking around her hospital room in February 2020 without a walker and did not appear to be in acute distress. (*See* R. at 1359.)

As to Plaintiff's testimony regarding her symptoms and frequent falls, the ALJ is tasked with making credibility determinations and weighing subjective complaints against the objective evidence of record. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (noting that "[s]ubjective evidence need not take precedence over objective evidence" and that "a factfinder's

---

[4] Whereas the Texas Transportation Code § 681.001 defines disability as a condition in which a person has mobility problems that *substantially impair* his or her ability to ambulate, Listing 11.14(A) requires the person be *unable* to maintain an upright position while standing or walking without the assistance of another person or an assistive device.

evaluation of the credibility of subjective complaints is entitled to judicial deference"). The ALJ appropriately weighed the testimony with the objective evidence in this case, which supports his determination that treatment is effective and that Plaintiff is not entirely reliant on an assistive device. (*See* R. at 485 (reporting that Lyrica improved symptoms in lower extremities), 488 (interpreting brain MRI to be within normal limits), 1246–47 (finding Plaintiff has a steady gait, can rise from a chair without using her arms, had immediate standing balance without an assistive device, and remained steady when nudged, among other similar findings), 1248 (noting Plaintiff has *occasional* unsteady gait).) The Court cannot reweigh this evidence.

The Court finds that Plaintiff has not demonstrated she is unable to maintain an upright position while standing or walking without assistance as required to meet Listing 11.14(A). *See, e.g.*, *See Ackerson v. Saul*, No. 19-CV-9158, 2020 WL 5077713, at *7 (E.D. La. Aug. 10, 2020) (pointing to the generally normal physical exams in the record and holding plaintiff did not meet Listing 11.14 requirements, despite toe amputation, "neuropathic oddities," and mildly abnormal gait), *report and recommendation adopted*, 2020 WL 5070031 (Aug. 26, 2020); *Berry v. Saul*, No. 18-CV-46, 2019 WL 4923979, at *11 (M.D. Tenn. Aug. 20, 2019) (finding plaintiff did not meet Listing 11.14 despite testimony that she could hardly get off the couch to walk), *report and recommendation adopted*, 2019 WL 4916566 (Oct. 4, 2019); *Norma H. v. Saul*, No. 18-CV-49, 2019 WL 9077288, at *14 (W.D. Va. July 12, 2019) (finding plaintiff did not meet Listing 11.14 despite use of cane and reports of falling due to neuropathy because plaintiff had been exercising and thus her functional limitations were not consistent with the listing). The ALJ's determination that Plaintiff is not disabled at Step Three is thus supported by substantial evidence.[5]

---

[5] To the extent the ALJ erred in discussing Plaintiff's neuropathy as part of the RFC findings instead of in Step Three, any error was harmless. *See Coscarelli v. Saul*, No. 19-CV-1219,

### B. Medical Opinion and Plaintiff's Mental RFC

The ALJ is responsible for determining a claimant's RFC—the "most the claimant can still do despite his [or her] physical and mental limitations"—before Step Four in the disability evaluation process. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC is "determined by combining a medical assessment of [a claimant's] impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988). The ALJ maintains discretion in determining the weight given to the medical evidence and is "not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Fleming v. Saul*, No. 19-CV-701, 2020 WL 4601669, at *4 (W.D. Tex. Aug. 10, 2020). Nevertheless, "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based . . . on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

The ALJ here found Plaintiff has the RFC to perform sedentary work but is limited to detailed, not complex, tasks as a result of her anxiety and depression. (R. at 15.) The ALJ noted the record shows relatively conservative treatment and unremarkable mental status examinations. (R. at 16.) There is no evidence of psychotic symptoms, suicidal ideation, or serious deficits in memory or concentration that preclude detailed work. (R. at 16.) In fact, Plaintiff reported her symptoms are well-controlled by medication and any problems occurred when Plaintiff ran out of

---

2021 WL 8053621, at *8 & n.3 (W.D. Tex. Jan. 29, 2021); *see also Meador v. Colvin*, No. 13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) ("A cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion.").

medication. (R. at 16–17.) The ALJ thus found Plaintiff's treatment history and mental status examinations are not consistent with the severity of her alleged symptoms. (R. at 17.) The ALJ also considered three state agency consultant opinions but found them to be either somewhat persuasive or not persuasive because they occurred before the most recent treatment notes were added to the record. (R. at 17–18.)

The Court recognizes the ALJ's explanation of the state agency opinions is not entirely clear.[6] However, the ALJ considered the results of mental status exams, Plaintiff's own reports, and Plaintiff's treatment history and then incorporated a mental RFC limitation at least partially consistent with one of the state agency opinions. (*See* R. at 81.) This does not strike the Court as lay interpretation of raw medical data, as Plaintiff argues. *See Carson v. Comm'r of Soc. Sec.*, No. 21-CV-12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022) (noting there is no requirement that the RFC mirror or match a medical opinion and holding the ALJ did not err in finding state agency opinions not persuasive and in formulating the RFC based on testimony, medication management, activities of daily living, and other medical evidence), *report and recommendation adopted*, 2022 WL 2489340 (July 6, 2022); *Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021) (explaining the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the demands included in the RFC), *report and recommendation adopted*, 2021 WL 4025993 (Sept. 3, 2021).

---

[6] The ALJ appears to have found the opinions somewhat persuasive as to Plaintiff's physical limitations and not persuasive as to Plaintiff's mental limitations, but he did not differentiate in his citations to the record. (*See* R. at 17–18.) Additionally, the ALJ's discussion appears to be missing relevant information that could have made his reasoning more clear. (*See* R. at 18 ("Similarly, the opinion at Exhibit 7A that the claimant's mental impairment is not persuasive as records received at the hearing level show continued [treatment].").)

In any event, "[p]rocedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Courts consistently require a plaintiff to demonstrate prejudice from an ALJ's reliance on lay opinion to formulate the RFC. *See Allen v. Saul*, No. 19-CV-1575, 2020 WL 5412630, at *7 (S.D. Tex. Sept. 9, 2020); *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *3 (W.D. Tex. Mar. 27, 2018); *Norris v. Berryhill*, No. 15-CV-3634, 2017 WL 1078524, at *19 (N.D. Tex. Mar. 22, 2017); *Birge v. Colvin*, No. 12-CV-1777, 2013 WL 5526695, at *19 (N.D. Tex. Sept. 30, 2013). An error is prejudicial when it "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). On the other hand, an error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Jones v. Saul*, No. 19-CV-880, 2020 WL 5752390, at *18 (N.D. Tex. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5747873 (Sept. 25, 2020).

Plaintiff here has made no attempt to demonstrate prejudice, with the possible exception of her block citations to mental health records in the background section of her brief. (*See* R. at 6–7, 18–19.) This in itself warrants rejection of Plaintiff's argument. *See Myers*, 2021 WL 3012838, at *6; *Andre v. Astrue*, No. 11-CV-250, 2012 WL 5363321, at *5 (M.D. La. Sept. 24, 2012), *report and recommendation adopted*, 2012 WL 5363317 (Oct. 30, 2012).

The Court has nevertheless reviewed the record and found nothing to indicate the ALJ could have reached a different conclusion. As the ALJ pointed out, the mental status examinations were generally unremarkable unless Plaintiff had run out of medication. (*See* R. at 954–55 (normal thought content, linear thought process, no suicidal ideation or delusions, age appropriate insight, and good judgment), 958 (normal speech, OK mood, normal perceptions, good memory, fair

judgment, coherent thoughts, and normal orientation), 980–81 (normal speech, logical thought process, alert cognition, fair judgment and insight, and no delusions), 999 (normal speech, OK mood and affect, logical thought process, and fair insight and judgment), 1345 (anxious affect and thought content but only mildly impaired insight and judgment, no suicidal ideation, normal orientation, and intact memory).) Plaintiff's own reports to her treatment professionals confirm these findings. (*See* R. at 933 (medication "helps a lot" with depression), 938 (improvement in depression, better mood, controlled anxiety, calm thoughts, and no paranoia or mania), 943 (more good days than bad days, more functionality, stable mood, and reduced anxiety), 958 (clear and calm mind without racing thoughts, increased quality of life and happiness, reduced anxiety, and no paranoia or mania), 980 (symptoms well-controlled with medication).) The ALJ's findings as to Plaintiff's mental RFC are thus supported by substantial evidence.

IV. **CONCLUSION**

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 14) be **DENIED**, Commissioner's Motion for Summary Judgment (Dkt. No. 15) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 24, 2022.

_____
Sam S. Sheldon
United States Magistrate Judge